IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MARIAN SNOW,<br><br>            Plaintiff,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>            Defendant. | Case No. 5:14-cv-00059-FL<br><br>DECLARATION OF ELIZABETH S. BARNETTE IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION |

## DECLARATION OF ELIZABETH S. BARNETTE

I, ELIZABETH S. BARNETTE, hereby declare as follows:

1. I am an employee of Citibank, N.A., successor in interest to Citibank (South Dakota), N.A. ("Citibank"), a national bank located in Sioux Falls, South Dakota. Citibank (South Dakota), N.A. merged into Citibank, N.A. effective July 1, 2011. Citibank issues credit card accounts to persons throughout the country, including the credit card at issue in this action.

2. I have worked with Citibank or its affiliates in different capacities for approximately 17 years. In connection with my employment, I have personal knowledge of the general business practices of Citibank with respect to its credit card accounts. My responsibilities include the preparation of affidavits in connection with litigation involving Citibank, and I am authorized to provide this Declaration for Citibank. I have access to the business records relating to the credit card accounts issued by Citibank including, in particular, the records of cardmember accounts and the applicable card agreements.

3. The exhibits to this declaration are all true and correct business records created and maintained by Citibank, or its affiliates, in the course of regularly conducted business activity, and as part of the regular practice of Citibank to create and maintain such records, and

1

also were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. Certain exhibits have been redacted solely to protect the confidentiality of account information, such as, among other things, card member account numbers. The statements set forth in this declaration are true and correct to the best of my knowledge, information and belief. Except where based upon information provided by persons working under my direction and supervision, the statements contained herein are based on my personal knowledge or review of Citibank's records, including records pertaining to the Citibank credit card account issued to Plaintiff Marian Snow ("Snow" or "Plaintiff"). If called as a witness, I am competent to testify to the statements contained herein.

4. I understand that Plaintiff has filed a lawsuit regarding purported conduct by Citibank in an attempt to collect an alleged consumer "debt." Citibank's records reflect two credit card accounts issued to Plaintiff: a Home Depot credit card account currently ending in account no. 9412 ("Home Depot Account"); and a Citibank AAdvantage MasterCard currently ending in account no. 7111 ("Citi Account"). Citibank is the issuer of the Home Depot Account and the Citi Account, both of which can be used throughout the country. As set forth in detail below, based on my review of the records of the accounts, I have confirmed that both accounts are governed by terms and conditions that contain a nearly-identical arbitration agreement (the "Arbitration Agreement").

### THE HOME DEPOT ACCOUNT

5. The Home Depot Account was issued by Citibank on or about April 2, 2009. Attached hereto as Exhibit 1 is a copy of The Home Depot Consumer Credit Card Application executed by Plaintiff on April 2, 2009 for the Home Depot Account ("Application"). The Application provides that, by signing the Application, the cardholder certifies that she has "read

2

and agree to the CREDIT CARD DISCLOSURES and TERMS AND CONDITIONS OF OFFER .... I also agree to be bound by the terms and conditions of the Citibank Card Agreement that will be provided to me if credit is granted."

6. Like all Citibank credit card accounts, the Home Depot Account is subject to written terms and conditions that are reflected in a Card Agreement, as amended from time to time, which is provided to the cardholder when the Home Depot Account is issued.

7. Attached as Exhibit 2 is an exemplar Card Agreement which contains the arbitration agreement that was mailed to the Plaintiff when the Home Depot Account was opened. The Card Agreement contains an Arbitration Agreement.

8. Attached hereto as Exhibit 3 are copies of transaction detail reflected on periodic billing statements for the Home Depot Account for the period from April 6, 2009 through June 4, 2009 reflecting Plaintiff's use of the Home Depot Account to make charges.

9. On or about May 10, 2011, Citibank mailed a new Card Agreement reflecting the new terms of the Home Depot Account to become effective July 2011 ("2011 Card Agreement"). An exemplar of the 2011 Card Agreement that was mailed to the Plaintiff along with an exemplar change in terms notice is attached hereto as Exhibit 4. The Plaintiff had an opportunity to opt out of the 2011 Card Agreement (not the Arbitration Agreement itself), but did not do so. The 2011 Card Agreement also contains an Arbitration Agreement.

**THE CITI ACCOUNT**

10. Like the Home Depot Account, and every other credit card account issued by Citibank, the Citi Account also is governed by a Card Agreement that contains an Arbitration Agreement.

3

11.     As discussed below, the Arbitration Agreement was added to the Citi Account in or about October 2001, when Citibank caused to be mailed to its cardholders a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (the "Arbitration Change-in-Terms").

12.     Prior to the Arbitration Change-in-Terms, the Account was governed by a Card Agreement that was mailed to Plaintiff in January 2000, when Plaintiff accepted an offer to upgrade the Citi Account from a Citibank AAdvantage account to a Citibank Gold AAdvantage account (at the time the Citi Account ended in account number 1544). Attached hereto as Exhibit 5 is an exemplar of the Card Agreement that was mailed to Plaintiff at that time. The terms include an "applicable law" provision that provides "the terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located."

13.     In October 2001, Citibank caused to be mailed to Plaintiff the Arbitration Change-in-Terms with her October 2001 periodic statement for the Citi Account. A copy of the Arbitration Change-in-Terms for the Citi Account that was mailed to Plaintiff is attached hereto as Exhibit 6 to this Declaration. A copy of the transaction detail for the October 2001 billing statement for the Citi Account is attached hereto as Exhibit 7. The October 2001 billing statement included the following special message:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CITIBANK CARD AGREEMENT.

See Exhibit 7 at p. 2.

14.     Furthermore, in November 2001, a monthly periodic billing statement for the Account was mailed to Plaintiff, which included the following follow-up message:

WITHIN THE LAST 30 DAYS YOU SHOULD HAVE RECEIVED AN IMPORTANT NOTICE ABOUT ADDING BINDING ARBITRATION TO YOUR CITIBANK CARD AGREEMENT. IF YOU WOULD LIKE ANOTHER COPY PLEASE CALL THE CUSTOMER SERVICE NUMBER LISTED ABOVE.

A copy of the transaction detail for the November 2001 billing statement is attached hereto as Exhibit 8.

15. Citibank recorded the mailing of the Arbitration Change-in-Terms to Plaintiff its computer system records for the Citi Account. A copy of the printout of the computer screen from the records for Plaintiff's Citi Account that reflects that the Arbitration Change-in-Terms was sent to Plaintiff is attached hereto as Exhibit 9 (at the time the Citi Account ended in account number 3960) ("ARBITRATION CHANGE IN TERMS NOTICE INSERT").

16. Plaintiff, like other recipients of the Arbitration Change-in-Terms, was permitted, by taking certain steps as set forth in the Arbitration Change-in-Terms, to opt out of the Arbitration Agreement. Under the Arbitration Change-in-Terms, if Plaintiff objected to the Arbitration Change-in-Terms, she could opt out by submitting a written request for exclusion to the address set forth in the Arbitration Change-in-Terms within a specified time period.

17. Plaintiff did not opt out of the Arbitration Change-in-Terms. I can determine this because it was Citibank's regular practice to include a note in the computerized account records of those card members who chose to opt out. The records for Plaintiff's Citi Account do not reflect any such note, and there is no indication in the Citi Account records that Plaintiff ever notified Citibank of her intent to refuse to accept the terms of the Arbitration Change-in-Terms.

18. In addition, it was Citibank's regular practice to indicate in the computerized account records whether a card member's account is subject to arbitration. Attached hereto as Exhibit 10 is a copy of a printout of the computer screen that shows the arbitration indicator for Plaintiff's Citi Account. That indicator is marked "Y." This means the Citi Account is subject

to arbitration. If Plaintiff had opted out of the Arbitration Change-in-Terms, this field would show an "N." The computer system was programmed to place an "N" in this field when an opt out was noted on the system during the opt out period for the Arbitration Change-in-Terms.

19. The Arbitration Change-in-Terms also provided that the Arbitration Agreement would become effective on the day after the Statement/Closing date indicated on Plaintiff's November 2001 billing statement for the Citi Account. See Exhibit 8 at 2. The Statement/Closing date was November 6, 2001. See Exhibit 8. Thus, the Arbitration Agreement became effective on November 7, 2001. Plaintiff continued to use the Citi Account after the effective date of the Arbitration Agreement.

20. Attached hereto as Exhibit 11 are copies of transaction detail reflected on periodic billing statements for the Citi Account for the period December 6, 2001 through February 6, 2002. The transaction detail reflects charges and payments made to the Citi Account by Plaintiff.

21. In February 2005, Citibank mailed to Plaintiff a "Notice of Change-in-Terms, Right to Opt Out, and Information Update" (the "February 2005 Change-in-Terms") for the Citi Account. The February 2005 Change-in-Terms made certain amendments to the Arbitration Agreement, removing JAMS as an arbitration provider and revising the severability clause. A copy of the February 2005 Change-in-Terms for Plaintiff's Citi Account is attached hereto as Exhibit 12. A note was included in the February 2005 billing statement alerting Plaintiff to the February 2005 Change-in-Terms; a copy of the transaction detail for the February 2005 billing statement is attached hereto as Exhibit 13. As with the Arbitration Change-in-Terms, Plaintiff had the opportunity to opt out of the changes to the arbitration provision (not the Arbitration

6

Case 5:14-cv-00059-FL   Document 11   Filed 03/28/14   Page 6 of 7

Agreement itself), but did not do so. Instead, Plaintiff continued to use and make payments on the Citi Account after receiving the February 2005 Change-in-Terms.

22. As of March 19, 2014, the Home Depot account is charged off with a balance due of $5,306.32.

23. As of March 19, 2014, the Citi Account is charged off with a balance due and owing of $31,367.56.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed this 28th day of March 2014 at Jacksonville, Florida.

*Elizabeth S Barnette*
ELIZABETH S. BARNETTE