IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MARIAN SNOW,<br><br>      Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A.,<br><br>      Defendant. | Civil Action No. 5:14-cv-00059-FL |

MEMORANDUM IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S
MOTION TO COMPEL ARBITRATION AND TO STAY ACTION

## I. INTRODUCTION

In this case, Plaintiff Marian Snow ("Plaintiff") contends that Citibank, N.A. ("Citibank") supposedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the North Carolina Debt Collection Act, N.C. Gen. Stat. §§ 75-50, et seq. ("NCDCA"), based on telephone calls purportedly made to collect on an unidentified "debt" with Citibank. As confirmed by the accompanying Declaration of Elizabeth Barnette ("Barnette Declaration"), Plaintiff has two credit card accounts with Citibank. Regardless of the merits of Plaintiff's claim (or lack thereof),[1] Plaintiff's claims are subject to the arbitration agreement contained in the terms and conditions governing the credit card accounts. As amply demonstrated below, the arbitration agreement is a valid and enforceable agreement to arbitrate under both the Federal Arbitration Act ("FAA") and South Dakota law (which applies here

---

[1] Plaintiff recently has filed a number of lawsuits in this District against creditors and debt collectors, all of which are based on allegations of supposed misconduct in connection with debt collection. See Snow v. Global Credit and Collection Corp., et al., 5:13-cv-00721-FL (filed 10/15/13); Snow v. Wells Fargo Bank, N.A. et al., 7:14-cv-00002-BR (filed 01/03/2014); Snow v. Brock & Scott PLLC et al., 7:14-cv-00028-D (filed 02/05/2014); Snow v. Discover Fin. Servs. (Inc.), 5:14-cv-00025-D (filed 01/20/2014).

1

pursuant to a choice-of-law provision in the terms and conditions), completely encompasses the claims at issue, and expressly requires that Plaintiff's claims be arbitrated on an individual basis.

The U.S. Supreme Court recently issued several decisions confirming that the FAA, which unquestionably applies here, "reflects an 'emphatic federal policy in favor of arbitral dispute resolution'"[2] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[3]  Indeed, the decision in AT&T Mobility v. Concepcion, 131 S. Ct. 1740, 1744 (2011) makes absolutely clear that arbitration agreements must be enforced as written.  The FAA strongly favors the validity and enforceability of arbitration agreements and, except in limited circumstances not present here, such agreements must be enforced according to their express terms in both federal and state courts, and regardless of whether the claims asserted arise under federal or state law.  See e.g., Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013); Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 1203 (2012); CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012).

Moreover, as discussed below, courts across the country have repeatedly granted motions to compel arbitration based on the very same Citibank Arbitration Agreement presented in this case.  The result should be no different here.  Accordingly, the Motion should

---

[2] KPMG LLP v. Cocchi, No. 10-1521, __ S. Ct. __, 2011 WL 5299457, at *2 (Nov. 7, 2011) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985))

[3] AT&T Mobility v. Concepcion, __ U.S. __, 131 S. Ct. 1740, 1748 (2011); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1774 (2010) (confirming that "[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted).

be granted; the matter should be stayed; and this dispute should be submitted to arbitration pursuant to the parties' arbitration agreement.

## II. FACTUAL BACKGROUND

In her Complaint, Plaintiff asserts that Citibank violated the TCPA and the NCDCA based on telephone calls made to Plaintiff in 2012 in connection with an unidentified "debt." Complaint, ¶¶ 11-112. As described in the accompanying Barnette Declaration, Plaintiff has two credit card accounts that were issued by Citibank, a national bank located in South Dakota: (1) a Home Depot account (the "Home Depot Account"); and (2) a Citibank AAdvantage MasterCard account (the "Citi Account") (together, the "Accounts"). Barnette Decl., ¶¶ 1, 4.

The Accounts, like any other Citibank credit card accounts, are subject to written terms and conditions as reflected in a Card Agreement, as amended from time to time. Id. ¶¶ 5-9, Exs. 2, 4 (Home Depot Account), ¶¶ 10-21, Exs. 5, 6 (Citi Account). The Card Agreements governing the Accounts contain a choice of law provision providing for the application of federal law and the law of South Dakota, where Citibank is located. See e.g. id. Exs. 2, 4 (Home Depot Account Card Agreement provides "Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement"), Ex. 5 (Citi Account Card Agreement provides that "terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.").

Importantly, the Card Agreement for each of the Accounts contains an Arbitration Agreement. Card Agreements for the Home Depot Account were mailed to Plaintiff on two different occasions – in 2009 when the Account opened, and again in 2011. Barnette Decl., ¶¶5-9, Exs. 2, 4. With respect to the Citi Account, as thoroughly detailed in the Barnette Declaration, Citibank added the Arbitration Agreement to the Card Agreement by mailing

Plaintiff a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" in October 2001 (the "Arbitration Change-in-Terms"). Barnette Decl., ¶¶ 12-19, Ex. 6. For both Accounts, the Arbitration Agreement is nearly identical and provides that either party can elect mandatory binding arbitration as follows:

> **ARBITRATION:**
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> *Agreement to Arbitrate:*
> Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> *Claims Covered*
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.
>
> **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

   \*  \*  \*

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

   \*  \*  \*

Barnette Decl., Exs. 2 (p. 10), 4 (p. 9), 6 (p.1) (emphasis in original).

  The Arbitration Agreement also includes terms: (i) excluding small claims court actions; (ii) authorizing the arbitration hearing to proceed at a location convenient to the cardholder; and (iii) allowing for the reimbursement and/or advancement of arbitration fees. Id.[4]

  In February 2005, Citibank mailed another change-in-terms notice to Plaintiff for the Citi Account, which made additional amendments to the Arbitration Agreement, including the removal of one of the arbitration terms and a change to the severability provision. Barnette Decl., ¶ 21, Ex. 12.[5] Plaintiff also had the opportunity to opt out of these changes, but did not do so; she continued to use the Account. Id.

  In summary, Citibank provided the Arbitration Agreement to Plaintiff (and/or notified her about it) on at least four separate occasions – in October 2001 for the Citi Account, in February 2005 for the Citi Account, in 2009 when the Home Depot Account was opened, and again in 2011 for the Home Depot Account. Accordingly, there can be no dispute that Plaintiff's claims here are subject to the Arbitration Agreement.

---

[4] When Citibank mailed the Arbitration Change-in-Terms to the Plaintiff, it included special messages in Plaintiff's October and November billing statements notifying her of the change. Barnette Decl., ¶¶ 13, 14, Exs. 7, 8. Plaintiff also had the right to opt-out of the Arbitration Agreement, but chose not to do so. Id. ¶¶ 16-18.

[5] These changes were already incorporated in the Card Agreement that was mailed to Plaintiff when she opened the Home Depot Account in 2009. See Barnette Decl., ¶ 7, Ex. 2.

### III.   ARGUMENT

#### A.   Plaintiff's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement Governing The Account And Settled Authority.

##### 1.   Under The FAA, This Court Must Compel Arbitration Pursuant To The Express Terms Of The Arbitration Agreement.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").  As recently recognized by this Court, "[u]nder section 3 of the FAA, 'a court must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." ' " U.S. ex rel. TGK Enters, Inc. v. Clayco, Inc., __ F. Supp. 2d __, 2013 WL 5348464, *2 (E.D.N.C. Sept. 23, 2013) (Flanagan, J.) (quoting Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005) (quoting 9 U.S.C. § 3)).

"The FAA reflects 'a liberal federal policy favoring arbitration agreements,' and 'courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" Clayco, 2013 WL 5348464, *2 (citing Concepcion, 131 S.Ct. at 1745 (internal citations omitted)); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Perry v. Thomas, 482 U.S. 483, 490-91 (1987); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.14 (1985).

The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.  See e.g., Allied-

Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967). Here, there is no question that the FAA applies to this dispute because the credit card transactions at issue were made between Plaintiff, a resident of North Carolina (see Complaint, ¶ 4), and Citibank, a national banking association located in Sioux Falls, South Dakota. Barnette Decl., ¶¶ 1, 4. Indeed, the Arbitration Agreement explicitly states that "[t]his arbitration provision is governed by the [FAA]." (See id., Exs. 2, 4, 6 (under the heading "Broadest Interpretation").

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25; see also Perry, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted). Indeed, as recently confirmed by the Supreme Court, the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" Concepcion, 131 S. Ct. at 1748; accord Stolt-Nielsen, 130 S. Ct. at 1773; Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-54 (1995).

As instructed by this Court, "[i]n determining whether the dispute at issue is one to be resolved through arbitration, the court must 'engage in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" Clayco, 2013 WL 5348464, *2 (quoting Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (citations omitted)). An arbitration agreement governed by the FAA, like the

7

Arbitration Agreement here, is presumed to be valid and enforceable.[6] It is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).

Recognizing these principles, numerous courts across the country have enforced the same Arbitration Agreement at issue in this case. See e.g., Cayanan v. Citi Holdings, Inc., 928 F.Supp.2d 1182 (S.D. Cal. 2013); Coppock v. Citigroup, Inc., No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1177 (N.D. Cal. 2012); Daugherty v. Experian Info. Solutions, Inc., 847 F. Supp. 2d 1189, 1194-97 (N.D. Cal. 2012); Tractenberg v. Citigroup Inc., No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011); Eaves-Leonos v. Assurant, Inc., 3:07-CV-18-S, 2008 WL 80173, at \*\*6-7 (W.D. Ky. Jan. 8, 2008); Taylor v. Citibank USA, N.A., 292 F. Supp. 2d 1333 (M.D. Ala. 2003); Ingram v. Citicorp Credit Servs., Inc. (USA), No. 05-2095 B/An, slip op., 2005 WL 6518077 (W.D. Tenn. July 11, 2005), mag. recomm. adopted at 2005 WL 6518076 (W.D. Tenn. Aug. 25, 2005); Citibank USA v. Howard, No. 4:02CV64LN, slip. op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); Dumanis v. Citibank (South Dakota), N.A., No. 6:07-cv-6070 (CJS), 2007 WL 3253975, at \*3 (W.D.N.Y. Nov. 2, 2007); Sesto v. Nat'l Fin. Sys., Inc., Case No. 04 C 7768, 2005 WL

---

[6] The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles. See Concepcion, 131 S. Ct. at 1752-53 (states may not superimpose judicial procedures on arbitration); id. at 1751 n.7, 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.") (citing Preston v. Ferrer, 552 U.S. 346, 353 (2008)); Stolt-Nielsen, 130 S. Ct. at 1774 ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); see also Southland Corp. v. Keating, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

6519430 (N.D. Ill. Apr. 25, 2005); Barker v. Citibank (South Dakota), N.A., No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003). The result should be the same here, as Plaintiff's claims are clearly encompassed by the Arbitration Agreement contained in the terms and conditions governing the Account.

### 2. The Arbitration Agreement Is Valid And Enforceable Under South Dakota Law.

As stated above, the terms and conditions governing the Accounts, including the Arbitration Agreement, contain a South Dakota choice-of-law provision. Barnette Decl., Exs. 2, 4, 5. While the FAA exclusively governs the enforceability of the Arbitration Agreement according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.[7] See e.g., Ackerberg, 898 F. Supp. 2d at 1176-77 (finding that "South Dakota and federal law govern the parties' agreements here" and that application of other state's law "has been squarely rejected"); Cayanan, 928 F. Supp. 2d at 1198 (holding that South Dakota law applies to Citibank's credit card agreement); Daugherty, 847 F. Supp. 2d at 1193-95 (holding that South Dakota law applied to Arbitration Agreement pursuant to choice-of-law provision in Card Agreement); accord First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

---

[7] "[W]here the contracting parties have agreed 'that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.'" Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 668 (W.D.N.C. 2012) (quoting Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980)).

9

There can be no dispute that Plaintiff's Accounts with Citibank are subject to the terms and conditions contained in the Card Agreement, including the Arbitration Agreement. With respect to the Home Depot Account, the Arbitration Agreement was provided to Plaintiff with the Card Agreement when the Account was opened, and Plaintiff continued to use the Account and keep it open (until it was closed due to non-payment). South Dakota law is consistent with the Home Depot Card Agreement, providing that the "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ." S.D. Codified Laws § 54-11-9. Thus, by using the Account, Plaintiff accepted the Arbitration Agreement as part of the contract with Citibank. See e.g., Ackerberg, 898 F. Supp. 2d at 1176-77 (upholding Citibank's arbitration agreement and finding that "plaintiff accepted Citibank's terms through her subsequent use of the card."); Dumanis, 2007 WL 3253975, *2-3; Cayanan, 928 F. Supp. 2d 1198-99 (citing other cases); Eaves-Leonos, 2008 WL 80173, at *2-6.[8]

---

[8] See also Boomer v. AT&T Corp., 309 F.3d 404, 415 (7th Cir. 2002) (customer accepted terms of contract by failing to follow the non-acceptance instructions in the contract and continuing to use the services); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) (holding that a computer purchaser, by electing to keep the computer that he purchased rather than returning it within a specified time period, agreed to be bound by an arbitration provision sent to him by the seller); Herrington v. Union Planters Bank, N.A., 113 F. Supp. 2d 1026, 1032 (S.D. Miss. 2000) ("[T]he plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts."); Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 919 (N.D. Tex. 2000) ("Plaintiffs continued to use their First USA credit cards after receipt of the amendments. Therefore, Plaintiffs . . . are contractually bound by the arbitration provision of their Cardmember Agreements."); Stiles v. Home Cable Concepts, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (enforcing an arbitration provision contained in amendment to a credit card agreement because the plaintiff maintained his account after the effective date of the arbitration clause); Grasso v. First USA Bank, 713 A.2d 304, 309 (Del. Super. Ct. 1998) (holding that the plaintiff "unequivocally manifested acceptance" of her cardholder agreement by making purchases and payments on her account).

Furthermore, with respect to the Citi Account, at the time that Plaintiff was mailed the Arbitration Change-in-Terms in 2001, South Dakota law expressly allowed Citibank to change the terms of a credit card agreement by sending out a change-in-terms notice to the cardmember, as follows:

> Upon written notice, a credit card issuer may change the terms of any credit card agreement, if such right of amendment has been reserved, including finance charges, fees and other costs, effective as to existing balances, so long as the card holder does not, within twenty-five days of the effective date of the change, furnish written notice to the issuer that he does not agree to abide by such changes. Upon receipt of such written notice by the issuer, the card holder shall have the remainder of the time under the existing terms in which to pay all sums owed to the issuer or creditor. Use of the card after the effective date of the change of terms, including a change in interest rates, is deemed to be an acceptance of the new terms, even though the twenty-five days have not expired.

*See* former S.D. Codified Laws § 54-11-10.[9]

Here, consistent with the terms of the Card Agreement, Citibank notified Plaintiff in October 2001 that it was adding the Arbitration Agreement to her Citi Account Card Agreement effective November 2001. Barnette Decl., ¶¶ 10-21 Exs. 6-13. This method of adopting an arbitration agreement has been routinely upheld by the courts. See e.g., Dumanis, 2007 WL 3253975, **2-3; Cayanan, 928 F. Supp. 2d 1198-99 (citing other cases); Eaves-Leonos, 2008 WL 80173, at **2-6. Importantly, Plaintiff did not exercise her rights to reject the Arbitration Agreement; instead, she continued to use the Account. Thus, Plaintiff accepted the Arbitration Agreement as part of her respective contract with Citibank. See Ackerberg, 898 F. Supp. 2d at 1176-77 (upholding Citibank's arbitration agreement added through amendments and finding that "plaintiff accepted Citibank's terms through her

---

[9] The current § 54-11-10 still authorizes changing the terms of credit card agreements, including with respect to dispute resolution terms.

subsequent use of the card.");[10] S.D. Codified Laws § 54-11-9 (providing that the "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . .").

### 3. Plaintiff's Claims Fall Squarely Within The Scope Of The Arbitration Agreement.

Once it is determined that the parties have entered into a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Indeed, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Hopkins, 798 F.Supp.2d at 1344 (quoting Moses H. Cone, 460 U.S. at 24–25). Where the clause is broad, as is the case here, there is a

---

[10] See also Boomer v. AT&T Corp., 309 F.3d 404, 415 (7th Cir. 2002) (customer accepted terms of contract by failing to follow the non-acceptance instructions in the contract and continuing to use the services); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) (holding that a computer purchaser, by electing to keep the computer that he purchased rather than returning it within a specified time period, agreed to be bound by an arbitration provision sent to him by the seller); Herrington v. Union Planters Bank, N.A., 113 F. Supp. 2d 1026, 1032 (S.D. Miss. 2000) ("[T]he plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts."); Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 919 (N.D. Tex. 2000) ("Plaintiffs continued to use their First USA credit cards after receipt of the amendments. Therefore, Plaintiffs . . . are contractually bound by the arbitration provision of their Cardmember Agreements."); Stiles v. Home Cable Concepts, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (enforcing an arbitration provision contained in amendment to a credit card agreement because the plaintiff maintained his account after the effective date of the arbitration clause); Grasso v. First USA Bank, 713 A.2d 304, 309 (Del. Super. Ct. 1998) (holding that the plaintiff "unequivocally manifested acceptance" of her cardholder agreement by making purchases and payments on her account).

heightened presumption of arbitrability such that "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., 475 U.S. at 650.

Plaintiff's Arbitration Agreement extends to "[a]ll Claims relating to your account, a prior related account, or our relationship are subject to arbitration . . . ." Barnette Decl., Exs. 2, 4, 6 (under the heading "**What Claims are subject to arbitration?**"). The instant dispute supposedly is based on Citibank's collection activity related to the Accounts. Although baseless, Plaintiff's claims clearly "relate to" the Accounts and Plaintiff's relationship with Citibank. Furthermore, the Agreement clearly covers statutory claims. Barnette Decl., Exs. 2, 4, 6 (under the heading "**What Claims are subject to arbitration?**" – encompassing "Claims based on contract . . . statutory or regulatory provisions, or any other sources of law . . . .").

It is fundamental that causes of action premised on statutory rights are subject to contractual arbitration agreements just as are claims under the common law. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("[i]t is by now clear that statutory claims may be the subject of an arbitration. . ."); Mitsubishi Motors, 473 U.S. at 628 (noting that, in agreeing to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum"). The "duty [of the courts] to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Like other statutory claims, TCPA and NCDCA claims are arbitrable. See Cayanan, 928 F. Supp. 2d at 1198-99 (TCPA claims based on debt collection calls subject to arbitration under Citibank agreement); Moore v. T-Mobile USA, Inc.,

13

No. 10-CV-527 (SLT)(CLP), 2011 WL 609818, at *4 (E.D.N.Y. Feb. 15, 2011) ("any and all claims or disputes between you and us in any way related to or concerning the agreement, our services, devices or products, including any billing disputes" was "broad enough to encompass" TCPA claims); Galbraith v. Resurgent Capital Servs., No. CIV S 05-2133 KJM, 2006 WL 2990163, at *1 (E.D. Cal. Oct. 19, 2006) (state law debt collection claims are arbitrable); see also Garcia v. Dell, Inc., 905 F. Supp. 2d 1174, 1176 (S.D. Cal. 2012) ("common-law and statutory invasion of privacy, negligence, and unlawful and fraudulent business practices" based on recording telephone calls arbitrable). Based on the foregoing, the Motion should be granted.

### B. This Action Should Be Stayed Pending Arbitration.

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; accord Clayco, 2013 WL 5348464, *2-11. Accordingly, Citibank requests that this Court stay the action pending completion of arbitration pursuant to the express terms of the Arbitration Agreement.

### IV. CONCLUSION

For all of the foregoing reasons, Citibank respectfully requests that the Court grant this Motion and compel arbitration of Plaintiff's claims on an individual basis in accordance with the express terms of the valid and enforceable Arbitration Agreement governing Plaintiff's Accounts. In addition, this action should be stayed pending completion of arbitration

proceedings.

Respectfully submitted, this 28th day of March 2014.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Phillip A. Harris, Jr.
Joseph S. Dowdy
N.C. Bar No. 31941
Phillip A. Harris, Jr.
N.C. Bar No. 39740
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 877-3800
Fax: (919) 877-3799
Email: joe.dowdy@nelsonmullins.com
Email: phillip.harris@nelsonmullins.com
*Counsel for Defendant Citibank, N.A.*

# CERTIFICATE OF SERVICE

I, the undersigned attorney of the law offices of Nelson Mullins Riley & Scarborough LLP, do hereby certify that I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION** with the Clerk of Court using the CM/ECF system and served the following person by placing a true copy of the same in a repository in the custody of the United States Postal Service in an envelope designating delivery by First Class Mail:

    Marian Snow
    103 Nostalgia Lane
    Zebulon, NC 27597

Respectfully submitted, this the 28th day of March 2014.

    NELSON MULLINS RILEY & SCARBOROUGH LLP

    /s/ Phillip A. Harris, Jr.
    Phillip A. Harris, Jr.
    N.C. Bar No. 39740
    4140 Parklake Avenue, Suite 200
    Raleigh, North Carolina 27612
    Phone: (919) 877-3800
    Fax: (919) 877-3799
    Email: phillip.harris@nelsonmullins.com
    *Counsel for Defendant Citibank, N.A.*