IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-59-FL

| | |
|---|---|
| MARIAN SNOW, ) | |
| ) | |
| Plaintiff, ) | **ORDER AND** |
| ) | **MEMORANDUM &** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CITIBANK, N.A., ) | |
| ) | |
| Defendant. ) | |

Before the court are Defendant's motion to compel arbitration and to stay the action pending arbitration [DE #10] and Plaintiff's motion to strike the Declaration of Elizabeth S. Barnette [DE #14], the matter having been referred to the undersigned for disposition of Plaintiff's motion and for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendant's motion. Appropriate responses have been filed by the parties, and Defendant has filed a reply in support of its motion. For the reasons set forth below, Plaintiff's motion to strike is denied, and it is recommended that Defendant's motion be granted.

## BACKGROUND

Marian Snow ("Snow" or "Plaintiff") filed this action against Citibank, N.A. ("Citibank"), on February 3, 2014, for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") and the North Carolina Debt Collection Act, N.C. Gen. Stat. §§ 75-50 *et seq.* ("NCDCA"). Snow alleges that Citibank made 387 calls to her between February 7, 2012, and May 5, 2012, in an attempt to collect a consumer debt. Snow asserts that on February 7, 2012, she advised Citibank orally and in writing that any communications regarding her account should be made in writing, and she instructed Citibank not to call her

again. Notwithstanding her instructions, Snow maintains, Citibank continued to call about the account and (1) placed calls to her cellular telephone without her consent; (2) failed to disclose that it was a debt collector and/or was calling to collect a debt; (3) left messages using automated pre-recorded messages; (4) placed calls to her using automatic telephone dialing equipment; (5) made calls to her with such frequency as to constitute harassment; and (6) depleted Plaintiff's calling credits with her telephone service provider, effectively interfering with her ability to receive other calls, including potential emergency calls.

Snow has two credit card accounts with Citbibank: a Home Depot credit card account and a Citibank AAdvantage Mastercard. Snow applied for the Home Depot account in April 2009. The card agreement governing the account contained an arbitration agreement and authorized Citibank to change the terms of the agreement "at any time for any reason." (Decl. Elizabeth S. Barnette, Ex. 2 [DE #11-3] at 9.) In May 2011, Citibank mailed Snow a new card agreement reflecting changes to the terms of the Home Depot account to take effect July 2011. Plaintiff was given an opportunity to opt out of the 2011 card agreement but did not do so. (Barnette Decl. [DE #11] ¶ 9.) Included in the 2011 card agreement was an agreement allowing either party to elect mandatory, binding arbitration of

> "[a]ll Claims relating to your account, a prior related account, or our relationship . . . including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what the legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law;
> . . . .

(Barnette Decl., Ex. 4 [DE #11-5] at 12.) Also included in the 2011 agreement was a choice-of-law clause, which provided that "[f]ederal law and the law of South Dakota . . . govern the terms and enforcement of this Agreement." (Barnette Decl., Ex. 4 at 15.)

2

In January 2000, Snow accepted an offer to upgrade her Citibank AAdvantage Mastercard account to a Citibank Gold AAdvantage Mastercard account ("AAdvantage account"). Like the Home Depot account, the card agreement governing the AAdvantage account allowed Citibank to change the terms of the agreement at any time and further provided that "the terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located." (Barnette Decl., Ex. 5 [DE #11-6] at 5; Barnette Decl. ¶ 12.) In October 2001, Citibank mailed Snow a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" with the October 2001 billing statement. The purpose of the notice was to inform cardholders of Citibank's amendment of the card agreement to include an arbitration provision virtually identical to the arbitration provision set forth in the Home Depot card agreement. Included on the October 2001 billing statement was the following message:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CITIBANK CARD AGREEMENT.

(Barnette Decl., Ex. 7 [DE #11-8] at 3.) In November 2001, Citibank also mailed Snow a monthly periodic billing statement, which included the following message:

> WITHIN THE LAST 30 DAYS YOU SHOULD HAVE RECEIVED AN IMPORTANT NOTICE ABOUT ADDING BINDING ARBITRATION TO YOUR CITIBANK CARD AGREEMENT. IF YOU WOULD LIKE ANOTHER COPY PLEASE CALL THE CUSTOMER SERVICE NUMBER LISTED ABOVE.

(Barnette Decl. Ex. 8 [DE #11-9] at 3.)

The Notice of Change in Terms submitted with the October 2001 billing statement permitted Snow to opt out of the arbitration agreement by notifying Citibank of her non-

acceptance "in writing within 26 days after the Statement/Closing date indicated on [her] November 2001 billing statement." The Notice further stated:

> If you notify us by that time that you do not accept the binding arbitration provisions contained in this change in terms notice, you can continue to use your card(s) under your existing terms until the end of your current membership year or the expiration date on your card(s), whichever is later. At that time your account will be closed and you will be able to pay off your remaining balance under your existing terms.

(Barnette Decl. Ex. 6 [DE #11-7] at 5.)

In February 2005, Citibank sent Snow another notice of change in the terms of the AAdvantage account. This notice made certain changes to the arbitration provision and was noted on the February 2005 billing statement. The February 2005 notice provided Snow with the right to opt out of the changes on or before April 30, 2005. (Barnette Decl. ¶ 21.) Snow continued to use her AAdvantage account after the February 2005 amendment.

## DISCUSSION

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of arbitration agreements. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In determining whether a "dispute at issue is one to be resolved through arbitration, the court must 'engage in a limited review to ensure that the dispute is arbitrable – *i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the

4

substantive scope of that agreement.'" *United States ex rel. TGK Enters. v. Clayco, Inc.*, 978 F. Supp. 2d 540, 544 (E.D.N.C. 2013) (quoting *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002)). "To satisfy itself that [an agreement to arbitrate the particular dispute] exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co. v Int'l Broth. of Teamsters*, 130 S. Ct. 2847, 2856 (2010). Upon a showing that a party has failed to comply with a valid and enforceable arbitration agreement, the district court has no discretion – it must issue an order compelling arbitration. 9 U.S.C. § 4. If requested, the court must also stay the court proceedings pending resolution of the arbitration. 9 U.S.C. § 3.

Citibank contends that Snow's claims against it are subject to arbitration pursuant to the Home Depot and AAdvantage account agreements, as modified over time. Snow contends that Citibank has failed to allege and prove the existence of a valid, written arbitration agreement. Alternatively, Snow argues that her claims fall outside the scope of the arbitration agreement; that there is a valid, superseding agreement not to arbitrate; that the arbitration provision is procedurally and substantively unconscionable; and that the arbitration provision is otherwise void or unenforceable. (Pl.'s Mem. Resp. Df.'s Mot. Compel Arbitration & Stay Action ("Pl.'s Mem.") [DE #15].)

**I.      Motion to Strike Barnette Declaration**

Contemporaneous to the filing of her response to Citibank's motion, Snow filed a motion to strike the declaration of Elizabeth S. Barnette, which Citibank had submitted in support of its motion to compel arbitration. (Pl.'s Mot. Strike Decl. Elizabeth S. Barnette [DE #14].) Snow asserts that the statements made by Ms. Barnette should be stricken because (1) they "are not

based on personal knowledge and, therefore, are hearsay"; (2) "set out facts that would not be admissible in evidence"; (3) "do not show the declarant is competent to testify"; (4) "are inadmissible or incompetent evidence"; and (5) "are speculative or conclusory." The court has carefully considered Plaintiff's arguments and finds them to be without merit.

A review of Ms. Barnette's declaration reveals that she is an employee and corporate representative of Citibank who regularly assists in litigation involving Citibank accounts. She has personal knowledge of Citibank's general business practices with respect to its credit card accounts and has access to the business records relating to credit card accounts issued by Citibank. In her declaration, Ms. Barnette provides a history of Snow's Citibank credit card accounts, details the terms and conditions of those accounts and attaches as exhibits copies of various documents concerning Plaintiff's accounts, including exemplars of agreements and billing statements mailed to Plaintiff. Ms. Barnette attests that the exhibits are "true and correct business records created and maintained by Citibank, or its affiliates, in the course of regularly conducted business activity, and as part of the regular practice of Citibank to create and maintain such records, and also were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter." (Barnette Decl. ¶3.) She further declares:

> The statements set forth in this declaration are true and correct to the best of my knowledge, information and belief. Except where based upon information provided by persons working under my direction and supervision, the statements contained herein are based on my personal knowledge or review of Citibank's records, including records pertaining to the Citibank credit card account issued to Plaintiff Marian Snow . . . . If called as a witness, I am competent to testify to the statements contained herein.

(Barnette Decl. ¶3.)

The statements set forth in Ms. Barnette's declaration and made under penalty of perjury demonstrate that she has personal knowledge of the facts to which she has attested, that the

6

information and documents contained in her declaration are admissible in evidence and that, if called, she would be competent to testify to the matters set forth in the declaration. Accordingly, Plaintiff's motion to strike Ms. Barnette's declaration is denied.

## II. Existence of a Valid Arbitration Agreement

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Therefore, a court must first decide (1) whether a party agreed to submit to arbitration, and (2) which disputes the parties agreed to submit to arbitration.

The undersigned first addresses Plaintiff's contention that Citibank has failed to prove the existence of a valid agreement to arbitrate. The validity of an agreement to arbitrate is a question of state law governing contract formation. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002). Citibank contends that South Dakota law governs the parties' contractual rights and duties. Plaintiff does not dispute Citibank's contention, and it appears to the court that application of South Dakota law is consistent with federal common law choice-of-law rules. Where, as here, jurisdiction is based on federal question, courts apply federal common law, which honors the parties' choice of law unless "'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice' or 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue' and that state would be the state of the applicable law in the absence of an effective choice-of-law by the parties." *See Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d

7

1189, 1195 (N.D. Cal. 2012) (quoting Restatement (Second) of Conflicts of Laws § 187(2) (1988)). The card agreements at issue here specifically state that disputes would be governed by federal law and the law of South Dakota. Furthermore, Citibank has a substantial relationship to South Dakota as it is located there, and the law of South Dakota does not appear to be contrary to a fundamental policy of a state with a materially greater interest than South Dakota. The undersigned, therefore, applies South Dakota law in determining whether there exists a valid and enforceable agreement to arbitrate the parties' dispute.

Snow contends that Citibank's motion to compel arbitration should be denied because Citibank has failed to prove the existence of a valid arbitration agreement. (Pl.'s Mem. 8-12, 22-23.) Specifically, Snow argues that Citibank has not "submit[ted] any evidence proving a written arbitration agreement was, in fact, ever received by Plaintiff or that an 'agreement' ever existed." (Pl.'s Mem. at 9.) Plaintiff does not deny that she received card agreements containing the arbitration provisions at issue, nor does she claim that she timely rejected the card agreements. Rather, her argument here is that the only evidence presented by Citibank in support of an agreement – the declaration of Ms. Barnette and the accompanying documents – is "wholly inadmissible" because it consists of "conclusory speculation, hearsay, and [is] not based on personal knowledge." (Pl.'s Mem. at 10-11.) Furthermore, Plaintiff asserts that Citibank's motion is insufficient because it fails to allege that the agreement to arbitrate is valid. (Pl.'s Mem. at 12.)

As set forth above, the declaration of Ms. Barnette is not inadmissible. Additionally, the declaration and supporting documents set forth sufficient facts to support a finding that the terms of Plaintiff's credit card accounts were amended to include the arbitration provision. As to both credit card accounts, Citibank reserved its right to change the terms of the credit card agreement

at any time. Citibank's evidence further demonstrates that it sent Plaintiff notice of the amendments and gave Plaintiff the opportunity to opt out of the changes by notifying Citibank in writing within the time specified. The evidence also shows that Plaintiff did not opt out of the changes and continued to use her credit card accounts. Under South Dakota law, Plaintiff's continued use of the credit accounts constituted assent to the terms of the arbitration agreement. *See* S.D. Codified Laws § 54-11-10 (2001);[1] *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wa. Mar. 22, 2013); *Taylor v. Citibank*, 292 F. Supp. 2d 1333 (M.D. Ala. 2003). Plaintiff has presented no evidence to create a genuine issue of material fact concerning her acceptance of the amended terms.

Moreover, Citibank's failure to include in its motion "language stating there is a *valid* agreement to arbitrate" is of no consequence. The validity of a contract is a legal question within the exclusive purview of the court. Consequently, the inclusion or exclusion of such language in a party's pleading or other filing is without effect. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that courts "are not bound to accept as true a legal conclusion couched as a

---

[1] In 2001, South Dakota's statute on modification of credit card agreements provided as follows:

> Upon written notice, a credit card issuer may change the terms of any credit card agreement, if such right of amendment has been reserved, including finance charges, fees and other costs, effective as to existing balances, so long as the card holder does not, within twenty-five days of the effective date of the change, furnish written notice to the issuer that he does not agree to abide by such changes. Upon receipt of such written notice by the issuer, the card holder shall have the remainder of the time under the existing terms in which to pay all sums owed to the issuer or creditor. Use of the card after the effective date of the change of terms, including a change in interest rates, is deemed to be an acceptance of the new terms, even though the twenty-five days have not expired.

S.D. Codified Laws § 54-11-10 (2001).

factual allegation" (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted)).

## III. Scope of the Arbitration Agreement

Plaintiff alternatively argues that arbitration must be denied because her claims do not fall within the scope of the arbitration provisions. (Pl.'s Mem. 3-8, 27-28.) "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24. Thus, any doubts or ambiguities concerning "the scope of the arbitration clause itself [should be] resolved in favor of arbitration." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001).

The arbitration provisions in the instant case encompass Snow's claims. They provide for arbitration of "[a]ll Claims relating to your account, a prior related account, or our relationship . . . no matter what the legal theory . . . or what remedy . . . they seek," including claims "based on contract, . . . statutory or regulatory provisions, or any other sources of law." (Barnette Decl., Exs. 4 at 12, 6 at 2-3.) Specifically excluded from arbitration are "[c]laims filed in a small claims court." (Barnette Decl., Exs. 4 at 13, 6 at 3.) Snow's claims are for violation of the TCPA and the NCDCA and, therefore, fall within the scope of the arbitration provisions. Additionally, Snow sought to pursue her claims in this court, not in state small claims court. Consequently, the small claims exclusion set forth in the parties' arbitration provisions does not apply to Snow's claims.

## IV. Existence of a Superseding Agreement

Snow next argues that arbitration should be denied because the parties entered into a superseding agreement not to arbitrate. (Pl.'s Mem. at 12-17.) In support of this argument, Snow has submitted an affidavit stating that on three separate dates in 2012 she submitted to

10

Citibank an "Offer to Amend Cardmember/Credit Loan Agreement" to change the terms of her credit account to provide for, *inter alia*, a 0% interest rate, with principal payable at a minimum rate of $8 per month, no late fees or over-the-limit the charges, and no arbitration of disputes. (Aff. Marian Snow [DE #15-1] at 4.) Snow states that she submitted the offer to Citibank with monthly account payments but sent the payments and proposed account changes to Citibank's correspondence address as opposed to its payment address (Snow Aff. ¶¶ 2-3) and advised Citibank as follows:

> [C]ashing or in any way negotiating this check constitutes acceptance and unequivocal assent to this amendment. If you do not agree with these terms, you must advise of your rejection in writing 30 days from the date of this notice and return this check uncashed to the following address: Consumer Advocate Services, Attn: Declined Offers, P.O. Box 131149, Carlsbad, CA 92013.

(Snow Aff. at 4-5.) Snow attests that Citibank received her offers and did not reject them, as evidenced by the fact that each time the offer was made, Citibank cashed her check and applied the payment to her account. (Snow Aff. ¶¶ 5-7.)

Snow's argument here is, in essence, one of novation. Under South Dakota law, novation is "the substitution by contract of a new obligation for an existing one." S.D. Codified Laws § 20-7-5. The essential elements of novation are: "(1) a previous valid obligation, (2) agreement of all parties to the substitution under a new contract based on sufficient consideration, (3) extinguishment of the old contract, and (4) the validity of a new contract." *Ducheneaux v. Miller*, 488 N.W.2d 902, 911 (S.D. 1992) (quoting *Haggar v. Olfert*, 387 N.W.2d 45, 50 (S.D. 1986)). "Clear and convincing evidence is required in order to justify setting a written contract aside and holding it abandoned or substituted by subsequent parol evidence or contract." *Ducheneaux*, 488 N.W.2d at 911.

11

The credit card agreements applicable to Snow's accounts expressly state that Citibank can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing its rights under the agreement. (Barnette Decl., Exs. 4 at 10, 5 at 4.) Notwithstanding Plaintiff's attempt to amend the terms of her credit accounts, Citibank was entitled, under the clear and unequivocal terms of its contracts with Snow, to accept Snow's payments without forfeiting or waiving any rights it had under the credit card agreements. Absent Citibank's express acceptance of the terms proposed by Snow, Snow's offer was of no effect.

## V. Procedural and Substantive Unconscionability

Snow also contends that the arbitration agreements are unconscionable. South Dakota law governs this issue as well. Conscionability involves both procedural and substantive elements. *Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W.2d 184, 194-95 (S.D. 2007). Procedural unconscionability concerns "how the contract was made" and whether there was a meaningful choice or ability to negotiate terms. *Nygaard*, 731 N.W.2d at 195. Substantive unconscionability focuses on whether the terms are "overly harsh or one-sided," *Nygaard*, 731 N.W.2d at 195, and whether "one party is left without a remedy for another party's breach." *Baldwin v. Nat'l College*, 537 N.W.2d 14, 17 (S.D. 1995) (quoting *Rozeboom v. Northwestern Bell Tel. Co.*, 358 N.W.2d 241, 244 (S.D. 1984)).

Snow has failed to demonstrate that the arbitration provisions are the product of procedural unconscionability. The procedures used by Citibank in amending its card agreements were expressly authorized by South Dakota law. *See* S.D. Codified Laws, § 54-11-10 (2001). Pursuant to these procedures, Plaintiff was provided with notice and an opportunity to opt out of the changes and continue using her credit account under the preexisting terms until the end of her

membership or the expiration of her cards, whichever was later. Snow, therefore, had a meaningful choice to accept or reject the arbitration agreement.

Substantive unconscionability is also lacking. Plaintiff has not demonstrated how the arbitration provisions at issue here, which allow either party to elect arbitration, are "overly harsh or one-sided." Nor has she shown that the arbitration provisions leave her without a remedy. The FAA establishes a general policy favoring arbitration of disputes, and Snow has not shown that the arbitration clauses here are so oppressive as to be unconscionable.

**VI. Other Enforceability Issues**

Plaintiff further contends that the arbitration provisions should not be enforced because (1) they are against public policy (Pl.'s Mem. at 17-22); (2) Citibank may not elect arbitration under the language of the arbitration clauses (Pl.'s Mem. at 26-27); and (3) arbitration creates a systemic bias in favor of businesses (Pl.'s Mem. at 28).

Plaintiff's public policy argument is based on the premise that arbitration will limit her right to relief and will be more expensive for her to pursue her claims. As noted by Snow, provisions which operate to strip a party of substantive rights or remedies may violate public policy. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) ("We . . . note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."). However, the arbitration provisions here do not strip cardholders of any statutory remedies; they merely provide that either the cardholder or Citibank may elect to have their disputes decided in an arbitral forum as opposed to court. Plaintiff retains all of her rights under the TCPA and the NCDCA, including any right she may have to statutory damages.

13

Plaintiff has also failed to demonstrate that arbitration of the parties' disputes would be so prohibitively expensive that she will be precluded from effectively vindicating her rights. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000) ("[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."). The arbitration provisions in the instant case provide that the party seeking arbitration pays the initial filing fee, that Citibank will pay the fees of the arbitrator and arbitration firm for the first day of hearing and that "[a]ll other fees will be allocated as provided by the rules of the arbitration firm and applicable law." (Barnette Decl., Exs. 4 at 14, 6 at 3.) Plaintiff has presented no information concerning her potential costs in the arbitral forum and has therefore failed to show that the agreement is unenforceable on this basis.

Plaintiff's argument that Citibank is not entitled to elect arbitration is based on the following language contained in the arbitration provisions: "A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party." (Barnette Decl., Exs. 4 at 12, 6 at 3.) Plaintiff misconstrues this language as giving the plaintiff in a civil action the exclusive choice whether to elect arbitration. In actuality, this language preserves a party's right to compel arbitration of claims filed by another (*e.g.*, a counterclaim) even though the party filed the action in a court of law. With respect to the issue of who may elect arbitration, the arbitration clauses clearly and unequivocally provide that "[e]ither you or we [Citibank] may, without the other's consent, elect mandatory, binding arbitration." (Barnette Decl., Exs. 4 at 12, 6 at 2.)

Finally, Snow argues that "forced arbitration creates a systemic bias in favor of businesses while offering few, if any, meaningful deterrents against negligence or even foul play,

14

such as blatant violation of both federal and state laws designed [to] protect consumer." (Pl.'s Mem. at 28-29.) This argument must be rejected in light of the federal policy favoring the enforcement of written arbitration agreements. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 24.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike the declaration of Elizabeth S. Barnette [DE #14] is hereby DENIED and it is RECOMMENDED that Defendant's motion to compel arbitration and to stay this action pending arbitration [DE #10] be GRANTED.

The Clerk shall send copies of this Memorandum and Recommendation to the parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 20th day of January 2015.

KIMBERLY A. SWANK
United States Magistrate Judge